UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTINE DRURY,

                     Plaintiff,

            -against-

WATERFRONT MEDIA, INC.,

                   Defendant.

05 CV 10646 (JSR)(DFE)

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

JACKSON LEWIS LLP
59 Maiden Lane. 39th Floor
New York, New York 10038
(212) 545-4000

**Counsel:**
Kevin G. Lauri (KL 8714)
Shaffin A. Datoo (SD 6929)

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ............................................................................. iii-vi

PRELIMINARY STATEMENT ....................................................................... 1

STATEMENT OF FACTS .............................................................................. 3

ARGUMENT ................................................................................................ 3

POINT I

STANDARD FOR GRANTING SUMMARY JUDGMENT
PURSUANT TO FED. R. CIV. P. 56 ................................................................ 3

POINT II

PLAINTIFF CANNOT ESTABLISH A VIOLATION OF
THE EPA AND TITLE VII WITH RESPECT TO HER UNEQUAL PAY CLAIMS ...... 3

   A.   Equal Pay Act Claims ............................................................................. 4

      1.   Plaintiff Cannot Establish A *Prima Facie* Case ................................... 5

      2   The Wage Disparity Was Based On Factors Other Than Sex ................. 8

         (i)   Geoff Strawbridge ........................................................................ 8

         (ii)  Ken Leung .................................................................................. 9

      3.   There Is No Evidence That Waterfront's Reasons Are Pretextual ........... 10

   B.   Title VII Claim ................................................................................... 12

POINT III

PLAINTIFF CANNOT ESTABLISH A VIOLATION OF
TITLE VII WITH RESPECT TO HER DEMOTION CLAIM ............................... 13

   A.   Plaintiff Cannot Establish A *Prima Facie* Case Of Discriminatory Demotion ... 13

      1   The Reassignment Did Not Constitute A Demotion .............................. 14

      2.   The Reassignment of Plaintiff's Technological Responsibilities Did Not Occur Under
         Circumstances Giving Rise To An Inference Of Discrimination ............... 16

B.   The Technological Responsibilities Were Reassigned Because Of Poor Performance .... 17

C.   There Is No Evidence That Waterfront's Reason Was Pretextual ..... ...............................21

POINT IV

PLAINTIFF CANNOT ESTABLISH A VIOLATION
OF TITLE VII WITH RESPECT TO HER RETALIATION CLAIM .. ..........................................21

A.   Plaintiff Cannot Establish A *Prima Facie* Case Of Retaliation. .... ....... .................... ...... 22

B.   Each Action Taken Towards Plaintiff Was Done For Business Reasons... ..................... 23

CONCLUSION..... ............. ......... ..................... ..... ..... ..... ..... ..... .... .......... ...... ...... ........ .....25

## TABLE OF AUTHORITIES

### FEDERAL CASES

Aldrich v. Randolph School District,
963 F.2d 520 (2d Cir. 1992) ..................................................................4, 12

Allen v. Argenbright Security, Inc.,
1999 U.S. Dist. LEXIS 18579 (E.D.N.Y. Oct. 6, 1999)...................................12

Allen v. Coughlin,
64 F.3d 77 (2d Cir. 1995).........................................................................3

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986)................................................................................3

Bennett v. Watson Wyatt & Co.,
136 F. Supp. 2d 236 (S.D.N.Y. 2001).........................................................23

Brennan v. City of White Plains,
67 F. Supp. 2d 362 (S.D.N.Y. 1999)...........................................................23

Cooper v. N.Y. State Department of Human Rights
986 F. Supp. 825 (S.D.N.Y. 1997)............................................................14

Council v. Tri-Star Construction Co.,
2004 U.S. Dist. LEXIS 1921 (S.D.N.Y Feb. 10, 2004).................................16

DiNolfo v. Rochester Telegraph Corp.,
927 F. Supp. 718 (W.D.N.Y 1997)..........................................................5, 7

Doria v. Cramer Rosenthal McGlynn, Inc.,
942 F. Supp. 937 (S.D.N.Y. 1996)..............................................................7

Engelmann v. NBC Inc.,
1996 U.S. Dist. LEXIS 1865 (S.D.N.Y. Feb. 22, 1996)..................................9

Feingold v. New York
366 F.32 (2d Cir. 2004).........................................................................22

Fisher v. Vassar College,
114 F 3d 1332 (2d Cir. 1997)..................................................................18

Galabya v. N.Y. City Board of Education,
202 F.3d 636 (2d Cir. 2000)......................................................14, 15, 22

Garber v. N.Y. City Police Department,
 1997 U.S. Dist. LEXIS 12590 (S.D.N.Y. Aug. 22, 1997)........................................14

Gibson v. Crucible Materials Corp.,
 290 F. Supp. 2d 292 (N.D.N.Y. 2003)......................................................23

Gibson v. Jacob K. Javits Convention Ctr. Of N.Y.,
 1998 U.S. Dist. LEXIS 3717 (S.D.N.Y. Mar. 23, 1998)..................................4

Goenaga v. March of Dimes Birth Defects Foundation,
 51 F.3d 14 (2d Cir. 1995).......................................................................3

Grady v. Affiliated Central, Inc.,
 130 F.3d 553 (2d Cir. 1997)...............................................................16

Gross v. NBC, Inc.,
 232 F. Supp. 2d 58 (S.D.N.Y. 2002)..........................................................8

Hlinko v. Virgin Atlantic Airways, Ltd.,
 1999 U.S. App. LEXIS 32544 (2d Cir. Dec. 15, 1999)................................9

Katz v. Beth Israel Medical Ctr.,
 2001 U.S. Dist. LEXIS 29 (S.D.N.Y. Jan. 4, 2001)...................................23

Kellett v. Glaxo Ent. Inc.,
 1994 U.S. Dist. LEXIS 17021 (S.D.N.Y. Nov. 30, 1994)..............................7

Koster v. Chase Manhattan Bank,
 609 F. Supp. 1191 (S.D.N.Y. 1985)..........................................................7

Lambert v. Genesee Hospital,
 10 F.3d 46 (2d Cir. 1993)......................................................................7

Mazzella v. RCA Global Communications, Inc.,
 642 F. Supp. 1531 (S.D.N.Y. 1986).........................................................9

McByers v. Metropolitan Museum,
 2002 U.S. Dist. LEXIS 22568 (S.D.N.Y. Nov. 22, 2002)............................17

McDonnell Douglas Corp. v. Green,
 411 U.S. 792 (1973)........................................................................ 17-18

Morrison v. Potter,
 363 F. Supp. 2d 586 (S.D.N.Y. 2005)................................................14, 15

Phillips v. Bowen,
   278 F.3d 103 (2d Cir. 2002) ......................................................................22

Quinn v. Green Tea Credit Corp.,
   159 F.32 (2d Cir. 1998) .....................................................................22-24

Richardson v. N.Y. State Department of Correctional Serv.,
   180 F.3d 426 (2d Cir. 1999) ...............................................................14

Savarese v. William Penn Life Insurance Co. of New York,
   418 F. Supp. 2d 158 (E.D.N.Y. 2006) ...........................................13, 15

Shieldkret v. Park Place Entertainment Corp.,
   2002 U.S. Dist. LEXIS 1032 (S.D.N.Y. Jan. 23 2002)...........................9

St. Mary's Honor Ctr. v. Hicks,
   509 U.S. 502 (1993) ........................................................................10, 21

Terry v. Ashcroft,
   336 F.3d 128 (2d Cir. 2003) ..................................................................13

Texas Department of Community Affairs v. Burdine,
   450 U.S. 248 (1981) .........................................................................18 21

Tomka v. Seiler Corp.,
   66 F.3d 1295 (2d Cir. 1995)....................................................4, 7, 12 13

Usery v. Columbia University,
   568 F.2d 953 (2d Cir. 1977)....................................................................5

Waters v. Turner Wood & Smith Insurance Agency, Inc.,
   874 F.2d 797 (11th Cir. 1989) ...............................................................5

Weeks v. N.Y. State (Div. of Parole),
   273 F.3d 76 (2d Cir. 2001).....................................................................14

Zuffante v. Elderplan, Inc.,
   2004 U.S. Dist. LEXIS 5425 (S.D.N.Y. Mar. 31, 2004) .................20-21

## STATE CASES

Mauro v. Orville,
   259 A.D.2d 89, 697 N.Y.S.2d 704 (3d Dept. 1999) ..............................12

## FEDERAL STATUTES

29 C.F.R §1620.15(a)............................................................................................5

Equal Pay Act, 29 U.S.C. §206(d)....................................................................1, 4

Fed. R. Civ. P. 56(c) ...........................................................................................3

Fed. R. Civ. P 56(e)..............................................................................................3

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*......................1

## STATE STATUTES

New York Labor Law §194.....................................................................................1

New York Executive Law §290................................................................................1

New York Executive Law §296..............................................................................13

Administrative Code of the City of New York.........................................................1

## PRELIMINARY STATEMENT

Christine Drury ("Plaintiff") commenced this action against Waterfront Media Inc. ("Waterfront"), an internet start-up company that was founded in March 2002, after voluntarily resigning in late-July 2005; less than two years after her October 1, 2003 start date. Plaintiff, who was initially hired to manage projects was promoted to Vice President and was assigned the added responsibility of managing Waterfront's technology team and quality assurance ("Technological Responsibilities") in March 2004. Concomitant with her additional responsibilities, Plaintiff's total compensation was increased. However, by January 2005, Plaintiff's performance deteriorated and Waterfront's CEO, who initially decided to promote and assign Plaintiff the Technological Responsibilities, reassigned those responsibilities, enabling Plaintiff to focus on project management. The reassignment did not affect Plaintiff's Vice President title and her compensation remained the same. Approximately five months later, Plaintiff resigned to accept new employment.

While the Complaint specifically asserts four claims, it may be summarized as follows: (a) unequal pay in violation of the Equal Pay Act, 29 U.S.C. §206(d) ("EPA") and the New York Labor Law §194 ("Labor Law"); (b) unequal pay in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("Title VII"), the New York Executive Law §290 *et seq.* ("Executive Law"), and the Administrative Code of the City of New York, §8-101 *et seq.* ("City Code"); (c) demotion in violation of Title VII, the Executive Law and the City Code; and (d) retaliation in violation of Title VII, the Executive Law and the City Code.

Based upon Defendant's Notice of Motion for Summary Judgment Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment, Defendant's Local Civil Rule 56.1 Statement, the Affidavit of Kevin G. Lauri, Esq. in Support of Defendant's Motion for Summary Judgment and the exhibits attached thereto, the Declaration of Benjamin Wolin, and

the Declaration of Ken Leung, Waterfront moves this Court for summary judgment and requests

an Order dismissing the Complaint in its entirety with prejudice because:

1.    As to Plaintiff's unequal pay claim:

    a.    Plaintiff and Ken Leung, an alleged comparator, did not perform substantially equal work because Mr. Leung was a computer programmer/software developer and Plaintiff was a project manager;

    b.    The wage disparity that existed between Plaintiff and Geoff Strawbridge at the time he assumed her Technological Responsibilities was because he had a higher starting salary when he was hired in a different role and because he received an annual increase prior to assuming the Technological Responsibilities, and Plaintiff cannot demonstrate that those reasons were a pretext for sex discrimination; and

    c.    The wage disparity that existed between Plaintiff and Ken Leung at the time she assumed her Technological Responsibilities was because he had a higher starting salary when he was hired to build and run Waterfront's core technology and because he received annual increases prior to Plaintiff assuming said responsibilities.

2.    As to Plaintiff's demotion claim:

    a.    The reassignment of Plaintiff's technological responsibilities did not constitute an adverse action because it did not significantly diminish her material responsibilities and she kept her Vice President title and she did not suffer a loss in salary, benefits and opportunity for promotion, and the reassignment did not occur under circumstances giving rise to an inference of discrimination; and

    b.    Plaintiff's technological responsibilities were reassigned because of her poor performance, and Plaintiff cannot demonstrate that this reason was a pretext for discrimination

3.    As to Plaintiff's retaliation claim:

    a.    Plaintiff was not subject to an adverse action after she informed Waterfront that she was going to file a Charge of Discrimination with the Equal Employment Opportunity Commission; and

    b.    Each alleged retaliatory action taken towards Plaintiff was done for legitimate, non-retaliatory reasons.

## STATEMENT OF FACTS

Waterfront respectfully refers this Court to Defendant's Local Civil Rule 56.1 Statement for a complete statement of facts relevant to this motion.

## ARGUMENT

### POINT I

### STANDARD FOR GRANTING SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56

Summary judgment may be granted "only when the moving party demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. " Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). Nevertheless, 'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The nonmoving party cannot meet its burden through reliance on unsupported assertions, contentions that the affidavits supporting the motion are not credible, or "upon the mere allegations or denials of the adverse party's pleading." Fed. R. Civ. P. 56(e); Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995).

### POINT II

### PLAINTIFF CANNOT ESTABLISH A VIOLATION OF THE EPA AND TITLE VII WITH RESPECT TO HER UNEQUAL PAY CLAIMS

Plaintiff claims that Waterfront paid her less than its other male Vice Presidents when she became a Vice President in March 2004. Specifically, Plaintiff claims that she was paid less than Ken Leung, Vice President of Technology, and Geoff Strawbridge, when he assumed Plaintiff's

3

Technological Duties and was given her job title as Vice President of Production and Operations in February 2005.[1]

## A.   Equal Pay Act Claims

To prove a violation of the EPA, the plaintiff must first establish a *prima facie* case of discrimination by showing: "(i) the employer pays different wages to employees of the opposite sex; (ii) the employees perform equal work on jobs requiring equal skill, effort and responsibility; and (iii) the jobs are performed under similar working conditions. Tomka v. Seiler Corp., 66 F.3d 1295, 1310 (2d Cir. 1995).[2]

If the plaintiff establishes a *prima facie* case, the burden of persuasion shifts to the defendant to show that the wage disparity is justified by one of the following affirmative defenses: (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex. 29 U.S.C §206(d)(1). Any of the four exceptions, if established, is a complete defense to conduct that would otherwise violate the statute. 29 U.S.C §206(d)(1).

If the defendant bears its burden of persuasion, the defendant will be entitled to summary judgment unless the plaintiff comes forward with evidence that indicates that the proffered reason for the pay disparity is false and that unlawful discrimination was the real reason for the pay disparity. See Aldrich v. Randolph School Dist., 963 F.2d 520, 526 (2d Cir. 1992).

---

[1]     Plaintiff admits that her only comparators are Ken Leung and Geoff Strawbridge after he assumed her Technological Responsibilities. (Plaintiff Dep. p.123, 127).

[2]     The allegations necessary to plead a claim under New York Labor Law §194 are identical to those under the Equal Pay Act. See Gibson v. Jacob K. Javits Convention Ctr. Of N.Y., 1998 U.S. Dist. LEXIS 3717, at **5-6 (S.D.N.Y. Mar. 23, 1998). Therefore, for the reasons set forth herein, summary judgment is appropriate under Plaintiff's Labor Law claim as well.

1.    **Plaintiff Cannot Establish A *Prima Facie* Case**

Plaintiff fails to satisfy the second prong of her *prima facie* case with respect to Leung because she cannot demonstrate that her and Leung performed equal work on jobs requiring equal skill, effort, and responsibility.[3]

In order to satisfy the second prong of a *prima facie* case, the plaintiff must demonstrate that her job and the job of her comparator are "substantially equal as to the requisite skill, effort, and responsibility." Usery v. Columbia Univ., 568 F.2d 953, 958 (2d Cir. 1977). The administrative regulations interpreting the EPA define "skill" as the experience, training education, and ability required in the performance of a job. 29 C.F.R. §1620.15(a). Although "the test is one of substantiality, not entirety, . . . in EPA cases, the standard for determining whether jobs are equal in terms of skill, effort, and responsibility are high." DiNolfo v. Rochester Tel. Corp. 927 F. Supp. 718, 723 (W.D.N.Y. 1997) (quoting Waters v. Turner, Wood & Smith Ins. Agency, Inc., 874 F.2d 797, 799 (11th Cir. 1989).

Plaintiff cannot show that her job as Vice President of Production and Operations is substantially equal to Leung s job as Vice President of Technology. Both positions require different skills and have completely different responsibilities.    Leung is a computer programmer/software developer who was hired by Waterfront to build the core technology that would run Waterfront's websites. (Wolin Dep. p.15-16; Keriakos Dep. p.10). At Waterfront, Leung was responsible for: (1) programming and software development; (2) managing the technology team; (3) quality assurance; (4) coding; (5) database; (6) building the technological infrastructure; (7) running Waterfront s websites; and (8) making technology decisions. (Wolin Dep. p.15, 21, 30-31, 39, 53 56; Keriakos Dep. p.34 39). This position clearly requires an

---

3    For the purposes of this motion, Waterfront concedes that Plaintiff has established a *prima facie* case with respect to Geoff Strawbridge.

educational background in computers and programming and software development experience:
qualifications Plaintiff does not have. (Plaintiff Dep. p.122; Exhibit M). In fact, Plaintiff admits
that she does not have the skills to perform Leung's job. (Plaintiff Dep. p 122). At deposition,
Plaintiff testified as follows:

> Q.   And Ken was the technology person?
> A.   Yes.
> Q.   Did you have the skill set to take Ken Leung's job?
> A.   No.

(Plaintiff Dep. p.122). This admission is fatal to her unequal pay claims with respect to Leung.

Nevertheless, in contrast to Leung's job, Plaintiff was a project manager who was hired
by Waterfront to manage projects. (Wolin Dep p.34; Plaintiff Dep. p.41). At Waterfront, she
was responsible for: (1) scheduling and meeting project deadlines; (2) hiring and firing; (3)
allocating and managing resources; (4) instituting process; and (5) delivering projects. (Wolin
Dep. p.70-72; Plaintiff Dep. p.39, 56). This position requires no particular educational
background but requires experience in product or project management.

Based upon the above job descriptions and responsibilities, there is not doubt the two
jobs were not substantially equal. Leung, who is a computer programmer/software developer is
primarily responsible for building Defendant's technology; Plaintiff, who was a project manager
was primarily responsible for managing projects and ensuring they were "launched" on-time.
The only similarities between Plaintiff's and Leung's job was managing the technology team and
quality assurance (Plaintiff Dep p.123). At deposition, Plaintiff testified as follows:

> Q.   What responsibilities did you share with Ken?
> A.   Managing the resources in the technology department.
> Q.   And when you say "managing the resources," you mean
>      managing people?
> A.   Yes.
> Q.   So at some point in time, Ken was managing those people,
>      and at some point, you were managing those people?

A      Yes.

(Plaintiff Dep. p.123)   Although Plaintiff was assigned to manage the technology team and quality assurance, she was not tasked with the responsibility to build technology. (Wolin Dep. p.39). Rather, she was tasked with making sure that the technology team and quality assurance met their goals with respect to same (Wolin Dep. p.39).

Even though there may have been some similarities between their job duties, i.e. managing the resources in the technology department, "jobs which are 'merely comparable' are insufficient to satisfy a plaintiff's *prima facie* burden.' Tomka, 66 F.3d at 1310; see Lambert v. Genesee Hosp., 10 F.3d 46, 56 (2d Cir. 1993) ('When the additional tasks of one job in comparison to another job are substantial, the jobs are not congruent and the work is not equal '); DiNolfo v. Rochester Telephone Corp., 972 F. Supp. 718, 722 (W.D.N.Y. 1997) (no substantial equality between jobs where plaintiff claimed that some of her duties were similar to those of higher paid male employees but did not deny that some of her duties were not shared by them); Doria v. Cramer Rosenthal McGlynn, Inc., 942 F. Supp 937, 942 (S.D.N.Y. 1996) (even where the plaintiff's successor took on fifty percent of her former job duties, the additional responsibilities he was given are sufficient to establish that he and the plaintiff did not perform "equal work"); Kellett v. Glaxo Ent., Inc., 1994 U.S. Dist. LEXIS 17021, at *20 (S.D.N.Y. Nov. 30, 1994) ("small degree of overlap" did not establish substantial equality)[4]; Koster v. Chase Manhattan Bank 609 F. Supp. 1191, 1194 (S.D.N.Y. 1985) ('Certain areas of overlap' did not make jobs substantially equal; 'it is the overall job, not its individual segments, that must form the basis of comparison ').

---

[4]      Copies of all unreported decisions cited herein are attached in alphabetical order hereto as Exhibit "1."

7

Accordingly, because Plaintiff cannot establish that her job was substantially equal to Leung's job this Court should grant Waterfront summary judgment on Plaintiff's unequal pay claims with respect to Leung.

## 2.  The Wage Disparity Was Based On Factors Other Than Sex

Plaintiff also claims that when she became a Vice President in March 2004 she was paid less than Strawbridge when he assumed her Technological Responsibilities in February 2005 and that she was paid less than Leung when he was responsible for managing the technology team and quality assurance. Waterfront concedes that both Strawbridge and Leung were paid more than Plaintiff but the pay disparity between them and Plaintiff was based on factors other than sex.

### (i)  Geoff Strawbridge

Immediately prior to assuming Plaintiff's Technological Responsibilities, Strawbridge's salary was $125,000 and Plaintiff's salary was $100,000. (Plaintiff Dep. p.69; Strawbridge Dep. p.46). Strawbridge's compensation was higher because: (1) he had been hired at a higher starting salary when he was hired as the Vice President of Customer Service; and (2) he received a subsequent increase prior to assuming Plaintiff's Technological Responsibilities.

Prior to being hired by Waterfront in September 2003 as the Vice President of Customer Service, Strawbridge's salary at Terra Lycos was $115,000 and he was eligible for a bonus in the amount of $23,000. (Strawbridge Dep. p.41). In order to lure Strawbridge away from Terra Lycos, Waterfront offered him a salary of $110,000, eligibility for a $20,000 bonus a signing bonus of $5,000 and 50,000 stock options (Strawbridge Dep. p.43; Exhibit N). This practice, commonly known as salary matching – payment of a higher salary to equal or exceed that of a prior job, or a competing offer – is a reasonable business tactic to lure or retain employees and justify a wage differential. See Gross v. NBC, Inc. 232 F. Supp. 2d 58, 71 (S.D.N.Y. 2002);

8

Shieldkret v. Park Place Entertainment Corp., 2002 U.S. Dist. LEXIS 1032, at *9 (S.D.N.Y. Jan. 23, 2002); Engelmann v. NBC Inc., 1996 U.S. Dist. LEXIS 1865, at **27-28 (S.D.N.Y. Feb. 22, 1996); Mazzella v. RCA Global Communications, Inc., 642 F. Supp. 1531, 1551 (S.D.N.Y. 1986). Also prior to assuming Plaintiff's Technological Responsibilities, in January 2005 Strawbridge's salary as Vice President of Customer Service was raised to $125,000 because of the excellent job he was doing managing the customer service department which handled 15,000 to 20 000 telephone calls and 15 000 to 20,000 e-mails from customers each month. (Strawbridge Dep. p.46).

Upon assuming Plaintiff's Technological Responsibilities in February 2005, Strawbridge similar to when Plaintiff assumed the same responsibilities from Leung was given the same $10,000 increase in salary, bringing his total salary to $135,000. (Exhibit X). Further because Strawbridge's new responsibilities required him and his family to temporarily relocate to New York, he continued to pay a mortgage on their house in Massachusetts Waterfront agreed to reimburse Strawbridge for his living expenses incurred in connection with his temporary relocation to New York and awarded him an additional 10,000 stock options. (Wolin Dep. p.112-115; Exhibit X). Simply put, Waterfront paid Strawbridge what he demanded. See Hlinko v. Virgin Atlantic Airways, Ltd., 1999 U.S. App. LEXIS 32544, at *7 (2d Cir. Dec. 15, 1999) (summary judgment affirmed because plaintiff did not raise "a triable issue of fact in response to [the defendant's] claim that they simply paid the candidate they wanted to hire what he demanded). Accordingly, the pay disparity between Strawbridge and Plaintiff was based on reasons other than sex.

### (ii)    Ken Leung

Assuming this Court finds that Leung's job was substantially equal to Plaintiff's job, which it was not, similar to Strawbridge, Leung s compensation was higher than Plaintiff

because he had been hired at a higher starting salary than her and he received subsequent increases prior to Plaintiff's assuming her Technological Responsibilities from him. Prior to being hired by Waterfront in November 2002 as Vice President of Technology, Leung's salary at Partsearch.com was $115,000, he was eligible for a bonus and was granted 35,000 stock options (Leung Dec. ¶9). In order to lure Leung away from Partsearch.com and based on the market rate for computer programmers/software developers. Waterfront which only consisted of Wolin and Keriakos at the time, offered him a salary of $95,000, with the caveat that he would receive regular salary increases as the company's revenue increased, and granted him equity in Waterfront. (Leung Aff. ¶9-10; Wolin Dep. p 22; Keriakos Dep. p.32). In 2003, his salary was increased to $115,000 and he was eligible for a $20,000 bonus (Exhibit K; Exhibit L). When Plaintiff's assumed Leung's responsibility to manage the technology team and quality assurance in 2004. Leung's salary was $120,000; Plaintiff's salary was increased to $95,000 and she was eligible for a $20,000 bonus. (Exhibit K; Plaintiff Dep. p.68). Accordingly, the pay disparity between Leung and Plaintiff was based on reasons other than sex.

## 3.   There Is No Evidence That Waterfront's Reasons Are Pretextual

As previously stated, if, as in this case, the defendant justifies the wage disparity the plaintiff has the burden of demonstrating that the stated reasons for the disparity was a mere pretext for discrimination. "[A] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993). Here, there is no evidence that Waterfront's reasons for the pay disparity between Plaintiff and Strawbridge and Leung were false and that discrimination was the real reason.

Even if Waterfront's reasons for the pay disparity are false, which they are not there is no evidence that discrimination was the real reason for the disparity. An analysis of the compensation paid to other Vice Presidents and the surrounding circumstances demonstrates that there is no evidence of gender bias.

For example in 2005 Waterfront added two female Vice Presidents that were paid more than Strawbridge, Vice President of Production and Operations, Leung, Vice President of Technology Errico, Vice President of Marketing, and Burke, Vice President of Sales: (1) Lizzy Klein, Vice President of Product Management and Development, was paid a salary of $155,000, was eligible for a $30,000 bonus and was granted 15 000 stock options; and (2) Julie Fenster, Vice President and General Counsel, was paid a salary of $150 000 and worked only four days a week was eligible for a $22 500 bonus and was granted 20,000 stock options. (Exhibit K; Exhibit S; Exhibit T). In fact, prior to becoming a Vice President, Lizzy Klein, when she was a director at Waterfront was paid more than the aforementioned male Vice Presidents. (Exhibit S; Klein Dep. p.18; Wolin Dec. ¶12).

Also, when Plaintiff and Strawbridge were assigned responsibility for managing the technology team and quality assurance, they both received exactly the same $10,000 increase in salary. (Plaintiff Dep. p.68; Exhibit X). Further, no other female Vice Presidents ever complained about a wage disparity between them and male Vice Presidents. Finally, Plaintiff admits that Wolin who made all salary decisions with respect to her, never made any discriminatory comments or acted in any way that would lead her to believe that he had a bias against women. (Plaintiff Dep. p.147). At deposition, Plaintiff testified as follows:

> Q.    Did Mike, Ben or Brian ever make any statements to you that lead you to the conclusion that they had a bias against women?
> A.    Not to my recollection.

11

> Q.  And did Mike, Ben or Brian take any actions that lead you to the conclusion they had a bias against women?
>
> A.  Not that I recall.

(Plaintiff Dep. p.147).

In light of these facts, there is no evidence that Waterfront's reasons for the pay disparity are pretextual. Accordingly, this Court should grant Waterfront summary judgment on Plaintiff's unequal pay claims.

## B.  Title VII Claim

Plaintiff's Title VII, Executive Law and City Code unequal pay claims also fail to withstand summary judgment. Claims of unequal pay for equal work under Title VII are "generally analyzed under the same standards used in an EPA claim."[5] See Tomka. 66 F.3d at 1312. However, unlike an EPA plaintiff, a Title VII plaintiff must also produce evidence of discriminatory intent in order to establish a *prima facie* case of intentional sex-based salary discrimination. See Aldrich, 963 F.2d at 528.

Plaintiff cannot establish a *prima facie* case under Title VII with respect to Leung because she cannot show that they both performed substantially similar work. Even assuming they did, for the reasons set forth above, there is no evidence that the pay disparity between them was a product of intentional sex discrimination. Similarly, for the reasons set forth above Plaintiff cannot establish a *prima facie* case under Title VII with respect to Strawbridge because there is no evidence that the pay disparity between them was a product of intentional sex discrimination. Moreover, the business reasons articulated for Leung's and Strawbridge's higher

---

[5]  Title VII analysis applies to claims under the Executive Law and the City Code. See Mauro v. Orville, 259 A.D.2d 89, 697 N.Y.S.2d 704, 707 (3d Dept. 1999); Allen v. Argenbright Security, Inc., 1999 U.S. Dist. LEXIS 18579 (E.D.N.Y. Oct. 6, 1999). Therefore, for the reasons set forth herein, summary judgment is appropriate under Plaintiff's Executive Law and City Code claims as well.

12

salaries – namely they were hired at higher salaries for different positions – are legitimate and non-discriminatory, and there is no evidence that these reasons are a pretext for discrimination. Accordingly, Plaintiff's concomitant Title VII, Executive Law and City Code claims also fail.

## POINT III

### PLAINTIFF CANNOT ESTABLISH A VIOLATION OF TITLE VII WITH RESPECT TO HER DEMOTION CLAIM

Plaintiff claims that she was demoted in February 2005 when Strawbridge assumed her title as Vice President of Production and Operations and her Technological Responsibilities. However, Plaintiff cannot establish a *prima facie* case of discriminatory demotion because she was not demoted and the reassignment of said responsibilities did not occur under circumstances giving rise to an inference of discrimination.

### A. Plaintiff Cannot Establish A *Prima Facie* Case Of Discriminatory Demotion

To establish a *prima facie* case of discriminatory demotion, the plaintiff must allege that: '(1) she belonged to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. [6] Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003); Savarese v. William Penn Life Ins. Co. of New York, 418 F. Supp. 2d 158, 161 (E.D.N.Y. 2006).

---

[6]     A plaintiff's claims under the Executive Law and City Code are subject to the same legal analysis as their Title VII claims. See Tomka v. Seiler Corp., 66 F.3d 1295, 1304 (2d Cir. 1995) ("The identical standards apply to employment discrimination claims brought under Title VII, Title IX, New York Executive Law §296, and the Administrative Code of the City of New York."). Therefore, for the reasons set forth herein, summary judgment is appropriate under Plaintiff's Executive Law and City Code claims as well.

## 1.    The Reassignment Did Not Constitute A Demotion

Plaintiff fails to satisfy the third prong of her *prima facie* case because she cannot demonstrate that she suffered an adverse employment action when her Technological Responsibilities were reassigned to Strawbridge.

"Merely changing someone's job duties does not automatically qualify as an 'adverse employment action '" Morrison v. Potter, 363 F. Supp. 2d 586 590 (S.D.N.Y. 2005). In defining what constitutes an "adverse employment action'" the Second Circuit observed that "not every unpleasant matter short of discharge or demotion creates a cause of action" for discrimination or retaliation. Richardson v. N.Y. State Dept. of Correctional Serv., 180 F.3d 426, 446 (2d Cir. 1999).

> An "adverse employment action" is a materially adverse change in the
> terms and conditions of employment.    To be 'materially adverse,' a
> change in working conditions must be more disruptive than a mere
> inconvenience or an alteration of job responsibilities.    Such a change
> might be indicated by a termination of employment, a demotion evidenced
> by a decrease in wages or salary, a less distinguished title, a material loss
> of benefits, significantly diminished material responsibilities, or other
> indices unique to the particular situation.

Weeks v. N.Y. State (Div. of Parole), 273 F.3d 76, 85 (2d Cir. 2001) (quoting Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000); Cooper v. N.Y. State Dep't of Human Rights, 986 F. Supp. 825, 828 (S.D.N.Y. 1997) ("The mere fact that an employee has been transferred or that his job responsibilities have changed is not in itself sufficient to show an adverse change in working conditions"); Garber v. N.Y. City Police Dept., 1997 U.S. Dist. LEXIS 12590, at **13, 18-20 (S.D.N.Y. Aug. 22 1997) (finding no adverse employment action where employee "earned the same salary had the same benefits, worked the same hours . . and had the same opportunities for promotion. ).

For example, in <u>Galabya</u>. the Second Circuit held that in order to qualify as an adverse employment action, a change in responsibilities must be so unsuited to the plaintiff's skills as to constitute "a setback to plaintiff's career." 202 F.3d at 641. Under that standard the Court of Appeals affirmed a dismissal of a teacher's claim that being assigned to teach classes outside his area of expertise constituted an "adverse employment action.'

Here, Plaintiff's "material responsibilities" were not "significantly diminished" when her technical responsibilities were reassigned.[7] When Plaintiff became Vice President of Production and Operations, her job responsibilities were to manage projects and the technology team and quality assurance. When her Technological Responsibilities were reassigned, Plaintiff was now free to concentrate on her project management responsibilities. (Wolin Dep. p.95-96, 109). Despite the reassignment, Plaintiff kept her Vice President title, and did not suffer a loss in salary, benefits or opportunity for promotion. (Plaintiff Dep. p.121, 158; Exhibit K) Although Plaintiff s responsibilities were somewhat altered, the change was not of such degree as to bring her within the protection of Title VII. <u>See</u> <u>Savarese</u>, 418 F Supp 2d at 162 (no adverse action where change in responsibilities were not significant); <u>Morrison</u> 363 F. Supp. 2d at 590-91 (no adverse action where there was no evidence that plaintiff's new duties were unsuited to her skills and were normally assigned to an individual in her position and were consistent with her prior experience).

Accordingly, because Plaintiff cannot establish this prong of her *prima facie* case, this Court should grant Waterfront summary judgment on Plaintiff's demotion claim.

---

[7]     The reassignment of Plaintiff s Technological Responsibilities is not quantifiable and did not result in Plaintiff suffering any economic damages, i.e., she kept her Vice President title and did not suffer a loss in salary, benefits, and opportunity for promotion. Furthermore, since Plaintiff waived her right to pursue non-economic damages (Exhibit BB), it seems prudent for Plaintiff to withdraw her demotion claim

2.     **The Reassignment of Plaintiff's Technological Responsibilities Did Not Occur Under Circumstances Giving Rise To An Inference Of Discrimination**

Plaintiff also fails to satisfy the fourth prong of her *prima facie* case because she cannot demonstrate that the reassignment of her Technological Responsibilities occurred under circumstances giving rise to an inference of discrimination.

In October 2003, Wolin, who previously worked with Plaintiff at Tribune, hired her to be the Director of Project Management at Waterfront. (Wolin Dec. ¶9; Plaintiff Dep. p.42, 44) Had Wolin harbored any discriminatory animus towards Plaintiff, he would not have hired her in the first place. Nevertheless, in March 2004, Wolin decided to promote Plaintiff to Vice President and assign her the additional responsibility for managing the technology team and quality assurance. (Wolin Dec. ¶10; Wolin Dep. p.36-37; Plaintiff Dep. p.54) Once again, had Wolin harbored any discriminatory animus towards Plaintiff, he would not have promoted her to Vice President and would not have assigned her said responsibility. Approximately eleven months later, in February 2005, Wolin decided to reassign said responsibility to Strawbridge because Plaintiff's performance deteriorated. (Wolin Dec. ¶11; Wolin Dep. p.91-92). Plaintiff even admitted that she was being stretched too thin. (Wolin Dep. p.134; Plaintiff Dep. p 89). Accordingly, because Wolin participated in the decision to promote and allegedly "demote" Plaintiff within a short time, a strong inference exists that discrimination was not a determining factor for the alleged "adverse action" taken by Waterfront. See Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997); Council v. Tri-Star Construction Co., 2004 U.S. Dist. LEXIS 1921, at *11 (S.D.N.Y. Feb. 10, 2004) ("Where the same actor makes a decision within a relative short time span, to hire and fire an employee, courts will often decline to input an invidious motivation – e.g., racial discrimination – that would be inconsistent with the decision to hire. Where, as here, the 'interim period is under two years the same actor inference remains

1f

significant.'"); McByers v. Metropolitan Museum, 2002 U.S. Dist. LEXIS 22568, at *4 (S.D.N.Y. Nov. 22, 2002) ("Ms. Miller, the person who hired plaintiff, is also the person who fired plaintiff, so the 'same actor' rule seriously undercuts any claim of discriminatory animus.").

Further, there is no evidence that similarly situated individuals not within Plaintiff's protected class were treated differently than her. In fact, when Leung was not managing the technology team and quality assurance to Wolin's satisfaction, Wolin reassigned those responsibilities from Leung to Plaintiff in March 2004. (Wolin Dec. ¶10). Thus, Wolin treated a male who was also unable to manage the technology team and quality assurance the same way he treated Plaintiff: by reassigning the responsibility.

Also, prior to Plaintiff's resignation in 2004 and 2005, Wolin hired several females for positions in Waterfront's senior management, and in 2005, Wolin promoted Lizzy Klein, formerly Director of Product Management and Development to Vice President of Product Management and Development and hired Julie Fenster as a Vice President and General Counsel. (Wolin Dec. ¶12-13). In fact, Plaintiff admits that she did not know of any women who applied for Vice President positions that were not hired (Plaintiff Dep. p.144). Moreover, Plaintiff admitted that Wolin never made any discriminatory comments or acted in any way that would lead her to believe that he had a bias against women. (Plaintiff Dep. p.147).

Accordingly, because Plaintiff cannot establish this prong of her *prima facie* case, this Court should grant Waterfront summary judgment on Plaintiff's demotion claim.

## B.    The Technological Responsibilities Were Reassigned Because Of Poor Performance

If the plaintiff establishes a *prima facie* case a presumption of discrimination is created and the burden of production shifts to the defendant to articulate some legitimate, non-discriminatory reason for the adverse employment action. McDonnell Douglas Corp. v. Green,

17

411 U.S. 792, 802 (1973). "Any legitimate non-discriminatory reason will rebut the presumption [of discrimination] triggered by the *prima facie* case." Fisher v. Vassar College, 114 F.3d 1332, 1335-36 (2d Cir. 1997). The defendant does not have to "prove" that its reason was non-discriminatory; it must merely articulate such a reason. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

Assuming Plaintiff can establish a *prima facie* case of discrimination which she cannot, beginning in September 2004, Plaintiff's work performance declined to the point where her Technological Responsibilities had to be reassigned. Specifically, after September 2004: (1) the technology department was not running efficiently (Wolin Dep. p.91); (2) the technologists, in particular Ken Leung and Nate Jones, were extremely unhappy with the way Plaintiff was managing the technology team and with the decisions she was making (Wolin Dep. p.76-77, 79; Jones Dep. p.35-36); (3) Plaintiff did not implement an adequate bug-tracking system for the products (Wolin Dep. p.124); (4) Plaintiff failed to establish relationships with Yahoo, Hotmail and AOL to ensure e-mail delivery (Wolin Dep. p.78-80; Cooper Dep. p.28-29); (5) Plaintiff was unable to resolve technological problems with Waterfront's e-mail delivery system (Wolin Dep. p.79-80); and (6) Plaintiff pursued the Funnel 2.0 upgrade, a software product, which proved to be a bad decision because it wasted Waterfront's resources since it was never implemented. (Wolin Dep. p.76-77, 88; Jones Dep. p.40). For example, at deposition, Nate Jones testified as follows:

> Q. So I'm trying to understand what it is, what it is specifically that Chris did not do. If she was holding these meetings and everybody sat around and discussed what it is they had done and what it is they were going to do and when they would finish it, what was it that she needed to do that she was not doing?
>
> A. Software development process requires a lot of integration between a lot of departments and people need to be able to know that when they finish this, this is the next thing they were going to work on, and I finished this

so I can pass this off to you and you can work on this, and there was none of that so there was just a jumble of people working on different things and no integration about how it fit together.

Q.   Now, did anybody complain to Chris at these meetings about that?

A.   I don't recall but probably. Probably shouldn't say that, but yeah.

Q.   Did you complain?

A.   I complained to other people.

Q.   Who did you complain to?

A   Ken and Ben.

(Jones Dep. p.35-36).

In fact, around the same time Plaintiff's work performance began to decline, she agreed with Wolin that Waterfront needed to hire a CIO to manage the technology department, which would have included managing the technology team and quality assurance. (Plaintiff Dep. p.155, 220, 223-224; Wolin Dep. p.133).

In addition. Plaintiff admitted that she was being spread too thin. (Wolin Dep p.134; Plaintiff Dep p.89). As a result, she was having difficulties performing her project management responsibilities. (Wolin Dep. p.69-70; Plaintiff Dep. p.89). For example, Lizzy Klein, Director of Product Management at the time, complained to Wolin about communication problems that were being caused by Plaintiff. that she was not moving the project forward and that she was not satisfied with the way Plaintiff was managing the What To Expect project. (Wolin Dep. p.76, 89; Klein Dep. p.28-30, 32-33, 35, 37-38; Exhibit V). At deposition, Ms. Klein testified as follows:

Q.   Let me strike that question. Let me ask you what you wanted Chris to do on What to Expect.

A.   To develop project schedules, to deliver on the functional specifications and launch the product on time.

               *      *     *

Q.   That was your expectation that is what she would do?

A.   Yes.

Q.   And she did not do that?

A.   Correct?

               *      *     *

Q.   Did she develop a project schedule?
A.   No.

\*         \*         \*

Q.   Do you recall complaining to anyone about Chris's performance?
A.   Yes.
Q.   And to whom did you complain.
A.   Ben.
Q.   And what did you say?
A.   That I wasn't getting the schedules or support that I needed to build the product.

\*         \*         \*

Q.   Can you recall how many occasions you complained?
A.   Not exactly.
Q.   Well, even generally?
A.   Between three and five.

\*         \*         \*

Q.   Eventually when did the problem get resolved?
A.   When I asked Geoff to have Nerissa assigned to my project.

\*         \*         \*

Q.   Were there any other operational problems besides Chris's not producing a schedule for you that were a source of concern?
A.   I did not feel the technology team had leadership.
Q.   What do you mean by that?
A.   Had sufficient leadership or management to do their jobs well and keep everyone moving on the same plan.
Q.   Did you express that to Ben, as well?
A.   Yes.

(Klein Dep. p.28-30, 32-33, 35, 37-38). As a result, Plaintiff was removed as project manager

from What To Expect and replaced by Nerissa Wells, her subordinate.

Accordingly Waterfront has articulated a legitimate, non-discriminatory reason for the

reassignment of Plaintiff's Technological Responsibilities. See Zuffante v. Elderplan, Inc., 2004

U.S. Dist. LEXIS 5425, at *24 (S.D.N.Y. Mar. 31, 2004) (poor performance is a legitimate non-discriminatory reason).

## C.    There Is No Evidence That Waterfront's Reason Was Pretextual

If, as in this case, the defendant meets its burden of production, the presumption of discrimination drops out of the analysis and the defendant will be entitled to summary judgment unless the plaintiff points to evidence that the stated reason for the reassignment of her Technological Responsibilities was a mere pretext for discrimination. Hicks, 509 U.S. at 515; Burdine 450 U.S. at 2570. "[A] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason." Hicks, 509 U.S. at 515. Notwithstanding these shifting burdens, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253-54. Here as set forth above, there is no evidence that Waterfront's reason for reassigning Plaintiff's Technological Responsibilities was false and that discrimination was the real reason for the decision.

In light of these facts, there is no evidence that Waterfront's reason for the reassignment was pretextual. Accordingly, this Court should grant Waterfront summary judgment on Plaintiff's discriminatory demotion claim.

## POINT IV

### PLAINTIFF CANNOT ESTABLISH A VIOLATION OF TITLE VII WITH RESPECT TO HER RETALIATION CLAIM

Plaintiff claims that she was retaliated against after she informed Waterfront that she was going to file a Charge of Discrimination ("Charge") with the EEOC in mid-April 2005. However, Plaintiff cannot establish a *prima facie* case of retaliation because she was not subject to an adverse employment action.

21

## A.    Plaintiff Cannot Establish A *Prima Facie* Case Of Retaliation

In order to establish a *prima facie* case of retaliation, the plaintiff must show: (1) participation in a protected activity known to the employer; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action. See Feingold v. New York 366 F.32 138, 156 (2d Cir. 2004) If the plaintiff establishes a *prima facie* case of retaliation, the defendant must articulate a legitimate, non-retaliatory reason for its actions. See Quinn v. Green Tea Credit Corp., 159 F.32 759. 768 (2d Cir 1998). If the defendant articulates such a reason the plaintiff bears the burden of proving that the proffered reason is merely a pretext for retaliation. Id. at 769.

Plaintiff fails to satisfy the second prong of her *prima facie* case because she cannot show that she was subject to an adverse action. An adverse employment action is defined as a "materially adverse change" in the terms and conditions of employment See Galabya, 202 F 3d at 640. The change must be "more disruptive than a mere inconvenience of an alteration of job responsibilities." Id. Furthermore, "not everything that makes an employee unhappy is an actionable adverse action." Phillips v. Bowen, 278 F.3d 103, 117 (2d Cir. 2002) Examples of materially adverse employment actions include termination and demotions accompanied by reduction in salary, material loss of benefits, or significantly diminished responsibilities. See Galabya, 202 F.3d at 640.

Here, Plaintiff alleges that Waterfront took the following actions towards her after she informed management that she was going to file a Charge with the EEOC: (1) removed her from the management distribution list (Plaintiff Dep. p.131); (2) refused to give her a formal job description despite asking for one from Strawbridge (Plaintiff Dep. p.135); (3) ostracized her, accused her of ignoring orders, and excluded her from management meetings (Plaintiff Dep

p.104, 137, 142, 151-152); and (4) made her share an office with subordinates (Plaintiff Dep. p. 97).[8]

None of these alleged actions rise to the level of an adverse employment action. With respect to items (1), (2) and (4), Plaintiff cannot show how being removed from the management distribution list, how not having a formal job description, and having to share an office materially altered the terms and conditions of her employment. (Plaintiff Dep. p.154). With respect to item (3), as a matter of law, being ostracized by co-workers, receiving unfair criticism and being yelled at, and being excluded from meetings, cannot be the basis of a retaliation claim. See Gibson v. Crucible Materials Corp., 290 F. Supp. 2d 292, 300 (N.D.N.Y. 2003) (being ostracized by co-workers cannot be a basis for a retaliation claim); Katz v. Beth Israel Med. Ctr., 2001 U.S. Dist. LEXIS 29, at *44 (S.D.N.Y. Jan. 4, 2001) ("Being yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments . . . do not rise to the level of adverse employment actions; they do not affect any ultimate employment decisions. ); Bennett v. Watson Wyatt & Co., 136 F. Supp. 2d 236, 247-48 (S.D.N.Y. 2001) (being subjected to unfair scrutiny, being excluded from meetings and being underutilized were not adverse employment actions); Brennan v. City of White Plains, 67 F. Supp. 2d 362, 374 (S.D.N.Y. 1999) (no adverse employment action where plaintiff failed to show that her exclusion from meetings affected her conditions of employment).

## B.     Each Action Taken Towards Plaintiff Was Done For Business Reasons

As set forth above, if the plaintiff establishes a *prima facie* case of retaliation, the defendant must articulate a legitimate, non-retaliatory reason for its actions. See Quinn v. Green

---

[8]     None of the alleged adverse actions Plaintiff claims she was subject to are quantifiable or resulted in Plaintiff suffering any economic damages. Furthermore, since Plaintiff waived her right to pursue non-economic damages (Exhibit BB), it seems prudent for Plaintiff to withdraw her retaliation claim.

Tea Credit Corp., 159 F.32 759, 768 (2d Cir. 1998). Even assuming these actions constituted adverse actions, Waterfront had a legitimate, non-retaliatory reason for all its actions. With respect to item (1), Plaintiff's removal from the management distribution list was inadvertent and when she brought it to Waterfront's attention, she was put back on the list (Plaintiff Dep. p.131-133). With respect to item (2), Plaintiff never had a formal job description when she was the Director of Project Management or the Vice President of Production and Operations. (Plaintiff Dep. p.154). Nevertheless Plaintiff was given a job description (Exhibit Z).

With respect to item (3), being ostracized by co-workers and management, Waterfront cannot respond to this allegation because Plaintiff did not provide any particulars during deposition. Also Plaintiff admits that she is speculating that Strawbridge's actions were retaliatory in nature when he accused her of lying and ignoring an order. (Plaintiff Dep. p.153). Nevertheless, this incident was a result of a miscommunication between Strawbridge and Plaintiff. (Plaintiff Dep. p.152; Exhibit AA). As well, Plaintiff admits that she was never uninvited from or told not to attend any meetings. (Plaintiff Dep. p.104). In fact, Strawbridge had a discussion with Plaintiff about attending meetings and left it up to her to decide whether to not attend (Plaintiff Dep. p.104; Strawbridge Dep. p.138)

Finally, with respect to item (4), Plaintiff had to share an office because the space on the eighth floor, where Plaintiff's office was alleged to have been, was never 'built out.' (Ruegg Dep. p.127-130). Besides, Strawbridge shared an office with Ken Leung and Nate Jones, and Wolin shared an office with Michael Keriakos and Brian Cooper. (Plaintiff Dep. p.97-99).

Accordingly, because Plaintiff cannot show she was subject to an adverse action and because there were non-retaliatory reasons for all actions taken, this Court should grant Waterfront summary judgment on Plaintiff's retaliation claim.

## CONCLUSION

For all the foregoing reasons, Waterfront respectfully requests that this Court grant its

motion for summary judgment in its entirety and dismiss the Complaint with prejudice, and grant

Waterfront such other and further relief that this Court deems just and proper.

Dated: June 21, 2006
New York, New York

Respectfully submitted,

JACKSON LEWIS LLP
59 Maiden Lane 39th Floor
New York, New York 10038
(212) 545-4000

By:

Kevin G. Lauri (KL 8714)
Shaffin A. Datoo (SD 6929)

ATTORNEYS FOR DEFENDANT
WATERFRONT MEDIA, INC.