```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
CHRISTINE DRURY,                         :
                                         :
              Plaintiff,                 :      05 Civ. 10646 (JSR)
                                         :
         -v-                             :      MEMORANDUM ORDER
                                         :
WATERFRONT MEDIA, INC.,                  :
                                         :
              Defendant.                 :
---------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

Plaintiff Christine Drury brings this action against her former employer, defendant Waterfront Media, Inc. ("Waterfront"), alleging (a) unequal pay in violation of the Equal Pay Act, 29 U.S.C. § 206(d); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended ("Title VII"); N.Y. Lab. Law § 194; the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"); and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-107(1)(a) and 8-502(a) ("NYCHRL"), and (b) gender discrimination and retaliation in violation of Title VII, NYSHRL, and NYCHRL.  Pending before the Court is Waterfront's motion for summary judgment on all claims.  For the reasons stated below, the motion is granted.

The pertinent facts, either undisputed or, where disputed, taken most favorably to plaintiff, are as follows.  Before joining Waterfront, Drury was a senior project manager at Columbia House, a direct marketer of movies, music, and video games, where she was responsible for managing the online component of its subscription services and was paid $85,000 annually.  Affidavit of Christine Drury, dated June 30, 2006 ("Drury Aff.") at ¶ 4; Defendant's Local Civil Rule 56.1 Statement

("Def.'s 56.1 St.") ¶ 29.  In October 2003, Waterfront, an online publisher of self-help materials, hired plaintiff as the Director of Project Management, responsible for organizing and managing all corporate projects, at a salary of $85,000 with an annual bonus of $15,000 and 25,000 stock options. Def.'s 56.1 St. ¶ 36.  She was asked to help manage Waterfront's marketing team and later asked to develop a quality assurance department.  Drury Aff. ¶ 5.  In March 2004, Waterfront promoted plaintiff to Vice President of Production and Operations, expanding her responsibilities to include management of Waterfront's technology team and quality assurance.  Def.'s 56.1 St. ¶ 41.  Her salary was increased to $95,000 and bonus to $20,000.  Def.'s 56.1 St. ¶ 50.  At the end of 2004, plaintiff's salary was further increased to $100,000 and she received a $20,000 bonus.  Def.'s 56.1 St. ¶ 51.

At the time of plaintiff's promotion, Waterfront had three other Vice Presidents: Ken Leung, Vice President of Technology, was paid a salary of $120,000, was eligible for a $20,000 bonus, and received 15,000 stock options; Geoff Strawbridge, Vice President of Customer Service, was paid a salary of $110,000, was eligible for a $25,000 bonus, and received 50,000 stock options; and Tom Burke, Vice President of Sales, was paid a salary of $90,000, was eligible for commissions based on sales, and received 25,000 stock options.  Def.'s 56.1 St. ¶ 52. Subsequently, Waterfront hired several vice presidents: Vince Errico, Vice President of Marketing, was paid a salary of $125,000, was eligible for a $15,000 bonus, and received 40,000 stock options; Karim

Farag, Vice President of Business Development, was paid a salary of $165,000, was eligible for a bonus of $110,000, and received 50,000 stock options; Lizzy Klein, Vice President of Product Management and Development, was paid a salary of $155,000, was eligible for a bonus of $30,000, and received 15,000 stock options; and Julie Fenster, Vice President and General Counsel, was paid a salary of $150,000, was eligible for a bonus of $22,500, and received 20,000 stock options. Def.'s 56.1 St. ¶¶ 56-57.

Although plaintiff's supervisors did not express any dissatisfaction to her and, on occasion, affirmatively complimented her, Drury Aff. ¶ 18, she conceded that she "was being stretched very thin" id. ¶ 22, that "[t]hese disparate responsibilities stretched my time" id. ¶ 23, and that she "was spending 40-70% of my time managing technology and only 20-30% managing projects resulting in my not being able to give new projects or the team producing them the time they required" id. ¶ 24.  In January 2005, citing plaintiff's declining work performance, Waterfront transferred responsibility for managing the technology team, formerly part of plaintiff's portfolio, to Geoff Strawbridge, Waterfront's Vice President of Customer Service. Def.'s 56.1 St. ¶ 71.  Plaintiff, re-titled Vice President of Product Management, retained responsibility for project management and her salary, but now reported to Strawbridge. Def.'s 56.1 St. ¶¶ 104-06. In mid-April 2005, in light of, inter alia, the change in job responsibilities and certain pay disparities, she informed Waterfront that she was going to file a discrimination charge with the EEOC. Def.'s 56.1 St. ¶ 115.  Following her EEOC filing, plaintiff alleges,

-3-

she was divested of most of her remaining responsibilities, was assigned only menial tasks, and, as a result, was unable to earn a bonus. Drury Aff. ¶¶ 38-40. Following unsuccessful attempts at mediation with the EEOC, she resigned to accept new employment. Id. ¶ 41.

Plaintiff first asserts that Waterfront violated the federal Equal Pay Act (the "EPA"), as well as its New York State and City analogues,[1] by paying her unequal pay for equal work. Under the EPA, it is unlawful for an employer to pay wages to an employee "at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . ." 29 U.S.C. § 206(d); see also Pollis v. New Sch. for Soc. Research, 132 F.3d 115, 118 (2d Cir. 1997) ("A violation [of the Equal Pay Act] occurs when an employer pays lower wages to an employee of one gender than to substantially equivalent employees of the opposite gender in similar circumstances.").

In prosecuting an EPA claim, a plaintiff bears the burden of establishing a prima facie case by making a showing that: "(i) the employer pays different wages to employees of the opposite sex ["comparators"]; (ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (iii) the jobs are performed under similar working conditions." Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999) (citing 29 U.S.C. § (d)(1)); see also

---

[1] Claims under the federal and state Equal Pay Acts are analyzed under the same standard. See, e.g., Tomka v. Seiler Corp., 66 F.3d 1295, 1312-13 (2d Cir. 1995); Gibson v. Jacob K. Javits Convention Ctr., 1998 U.S. Dist. LEXIS 3717 (S.D.N.Y. 1998).

Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974). Unlike Title VII, however, "[l]iability under the Equal Pay Act does not require a showing of discriminatory intent." Pollis, 132 F.3d at 123. If plaintiff carries her burden, a defendant may escape liability by proving that the wage disparity is justified by one of the following affirmative defenses: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). However, a plaintiff may counter any affirmative defense by, inter alia, producing evidence that the defendant's neutral justification is simply a pretext for unequal pay based on gender. See Aldrich v. Randolph Cent. School District, 963 F.2d 520, 526 (2d Cir. 1992).

Plaintiff has failed to establish a prima facie case as to all proposed comparators except (as conceded by Waterfront) Geoff Strawbridge. This is because she has not adduced competent evidence from which a reasonable juror could find that any of them "perform equal work on jobs requiring equal skill, effort, and responsibility." Although "comparators" need not occupy an identical job to plaintiff, jobs that are "merely comparable" in some vague way are insufficient to satisfy a plaintiff's prima facie burden. See Tomka v. Seiler Corp., 66 F.3d 1295, 1311 (2d Cir. 1995). Rather, plaintiff must show that her position and that of a given comparator are "substantially equal" in skill, effort, and responsibility. See Lavin-Mceleney v. Marist College, 239 F.3d 476, 480 (2d Cir. 2001). This inquiry is informed by the EPA's implementing regulations, which provide that "[s]kill includes

consideration of such factors as experience, training, education, and ability," 29 C.F.R. § 1620.15(a); "[e]ffort is concerned with the measurement of the physical or mental exertion needed for the performance of a job," 29 C.F.R. § 1620.16(a); and "[r]esponsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation," 29 C.F.R. § 1620.17(a). See also Usery v. Columbia University, 568 F.2d 953, 959 (2d Cir. 1977).

Courts have repeatedly made clear that the "substantially equal" requirement is designed to ensure that employers do not incur liability for legitimate wage disparities owing to differences. See, e.g., Strag v. Board of Trustees, 55 F.3d 943, 950 (4th Cir. 1995) (holding that plaintiff's choice of male comparator was improper "because: (1) [comparator] is employed by the Biology department of the College, while [plaintiff] is employed by the Mathematics department, two departments requiring different skills and responsibilities, and (2) ... Swain has more responsibilities than does Strag because he not only teaches normal lecture classes, but also instructs lab classes which require extra preparation."); Usery, 568 F.2d at 960 (holding that "light" cleaners did not expend effort substantially equal to that expended by "heavy" cleaners who cleaned more difficult and dirtier areas). Although this inquiry is often the province of the jury, see Tomka, 66 F.3d at 1311, two positions may be so different such that no reasonable juror could conclude that they are "substantially equal." On the basis of the undisputed evidence, the Court finds that to be the case here: no reasonable juror could conclude on the basis of the evidence here

adduced that any of the proposed comparators except Strawbridge held jobs that were "substantially equal" to that of plaintiff.

For example, one of the alleged comparators, Ken Leung, Waterfront's Vice President of Technology, is a computer programmer and software developer, charged with building the technology that would run Waterfront's websites. Leung's skills – specifically, his training, experience, and ability in computer programming — are entirely distinct from plaintiff's; plaintiff does not purport to be a "techie." See 29 C.F.R. § 1620.15(a). Indeed, plaintiff expressly conceded in her deposition that she did not have the skill set to take Leung's job. See Pl. Dep. at 122. In addition, Leung's position entails considerably different responsibilities, including programming and software development; hardware acquisition; and website operation. By contrast, as Director of Project Management, plaintiff was responsible for scheduling and meeting project deadlines, hiring and firing, and allocating and managing resources. Even when plaintiff managed the technology department, she never had responsibility for programming. Although plaintiff is correct that both she and Leung were classified as "Vice Presidents" and that a few of their responsibilities, such as managing technology personnel and overseeing quality assurance, were similar, that simply is not enough under the Equal Pay Act. Because Leung's position, unlike plaintiff's, demanded skill in and entailed responsibility for programming and software development, no reasonable juror could conclude that their jobs were "substantially equal." Any comparison between the wages paid for such dissimilar jobs would be

meaningless and risk imposing liability on an employer for non-discriminatory wage discrepancies.

In similar fashion, the other alleged comparators (except Strawbridge) occupied jobs that are not "substantially equal" to plaintiff's. Although Tom Burke, Vince Errico, and Karim Farag, like plaintiff, were vice presidents, managed employees and budgets, and reported to one of Waterfront's founders, each of their positions demanded entirely different skills and entailed entirely different responsibilities. Burke, Vice President of Sales and Advertising, was trained and had experience in marketing, having previously served in a variety of positions, including as an executive at an online advertising firm and online retailers and as a founder of a consulting firm specializing in online sales and marketing. At Waterfront, he was responsible for selling advertising on Waterfront's websites and newsletters. Vince Errico, Vice President of Marketing, was responsible for marketing Waterfront's products and overseeing media spending, and had experience in buying and marketing on-line media that Errico developed, having previously served as Vice President of eCommunications for Charles Schwab & Co. Finally, Karim Farag, Vice President of Business Development, was responsible for developing partnerships with other companies. Prior to joining Waterfront, Farag served as Vice President of Business Development for Cendant's on-line travel division and was responsible for generating over $50 million in revenue by developing partnerships with other companies. To analyze whether wage disparities result from gender, we must control, so far as possible, the other variables involved in setting wages, particularly skill and

responsibility; here, the skills and responsibilities of Leung, Burke, Errico, and Farak are so substantially different from plaintiff's that any comparison would be entirely non-instructive.

Turning to Strawbridge, whom defendants concede is a proper comparator, Waterfront has adduced uncontested evidence that Waterfront wanted to hire someone with Strawbridge's qualifications and that Waterfront had to pay Strawbridge a higher compensation than plaintiff in order to lure him away from his prior employer.  At his prior employer, Strawbridge was paid a salary of $115,000 and was eligible for a bonus in the amount of $23,000.  To recruit him, Waterfront offered him a salary of $110,000, eligibility for an annual $20,000 bonus, a signing bonus of $5,000, and 50,000 stock options.  Salary matching and experience-based compensation are reasonable, gender-neutral business tactics, and therefore qualify as "a factor other than sex."[2]  See, e.g., Shieldkret v. Park Place Entm't Corp., No. 01 Civ. 5471, 2002 U.S. Dist. LEXIS 1032, 2002 WL 91621, at *3 (S.D.N.Y. Jan. 23, 2002) ("Salary matching - payment of a higher salary to equal or exceed that of a prior job, or a competing offer - is a reasonable business tactic to lure or retain employees and justify a wage differential."); Sobol v. Kidder, Peabody & Co., Inc., 49 F. Supp. 2d 208, 220 (S.D.N.Y. 1999) ("An

---

[2] Defendant also introduced undisputed evidence that Strawbridge subsequently received a further $10,000 salary increase, bringing his salary to $135,000; but plaintiff had also received the same raise when she assumed similar responsibilities. Waterfront also reimbursed Strawbridge for his living expenses and awarded him an additional 10,000 stock options, but there was undisputed evidence that this was because he was required to temporarily relocate to New York from Massachusetts when he assumed some of plaintiff's responsibilities.  This again was gender neutral.

-9-

employer may pay higher wages to a male than a female when it is necessary to do so in order to hire or retain an employee with particular desired skills."); Engelmann v. National Broadcasting Co., Inc., No. 94 Civ. 5616, 1996 WL 76107, at *10 (S.D.N.Y. February 22, 1996) ("Salary matching -- payment of a higher salary to match an incoming employee's previous earnings -- also is a valid reason for wage differences, and one that falls into the catch-all factor-other-than-sex."); see also Horner v. Mary Inst., 613 F.2d 706, 714 (8th Cir. 1980).

Plaintiff also alleges that the aforementioned wage disparities violate Title VII and cognate State and City laws that forbid employers from discriminating with respect to compensation on the basis of gender. 42 U.S.C. § 2000e-2(a)(1); N.Y. Lab. Law § 194; N.Y. Exec. Law § 296; N.Y. City Admin. Code §§ 8-107(1)(a), 8-502(a).[3] To prove such wage discrimination, a plaintiff must, among other things, establish the same unwarranted pay differential as is required under the Equal Pay Act and that, as discussed above, plaintiff has failed to show here sufficiently to avoid summary judgment. But in County of Washington v. Gunther, 452 U.S. 161 (1981), the Supreme Court carved out an exception to this rule, holding that, under certain circumstances, an employer violates Title VII, but not the Equal Pay Act, if it intentionally depresses a plaintiff's wages on account of sex even if there were no employees of the opposite sex doing equal work for higher pay. See id. at 68; see also Brennan v. City of White Plains, 1998 WL 75692, *9 (S.D.N.Y. 1998).

---

[3] Plaintiff's federal, State, and City discrimination claims are analyzed under the same standard. See Weinstock v. Columbia Univ., 224 F.3d 33, 42 n.1 (2d Cir. 2000).

Here, however, plaintiff has failed to adduce any evidence whatever sufficient to allow a reasonable juror to conclude that plaintiff's wages were kept lower than they otherwise would be as a result of intentional discrimination based on gender. Indeed, plaintiff conceded in her deposition the she was aware of no statements or actions by her supervisors suggesting that they had any discriminatory animus against woman. Furthermore, the purported evidence of discrimination to which plaintiff points are the same wage disparities that, as discussed above, are not evidence of any wrongdoing whatever. See, e.g., Tomka, 66 F.3d at 1313 ("[plaintiff] has failed to produce any evidence that [defendant] paid her less than [comparators] because of her gender. Rather, she relies on the fact that those employees were paid more than she was and that they are men. These facts do not support an inference that [defendant] acted with a discriminatory intent . . ."). Furthermore, Title VII incorporates the affirmative defenses set forth in the Equal Pay Act which permit wage disparities between men and women pursuant to a differential based on any factor other than sex, see 42 U.S.C. § 2000e-2(h); see also Holt v. KMI-Continental, 95 F.3d 123, 132 (2d Cir. 1996) (citing Gunther, 452 U.S. at 170-71). Assuming arguendo that plaintiff adduced any evidence of discriminatory intent, any reasonable juror would conclude, for the reasons set forth above, that Waterfront had satisfied its burden of proving that the disparities in question were justified by a factor other than sex.

Her wage-related claims aside, plaintiff also alleges that she suffered an adverse employment action when responsibility for managing the technology department was transferred to Strawbridge and she was

divested of some of her project management responsibilities. But as previously noted, Waterfront has produced competent evidence that plaintiff's responsibilities were reassigned because she was being stretched too thin, her subordinates were complaining about her, and her work was inadequate. In response, plaintiff has failed to adduce any competent evidence from which a reasonable finder of fact could infer that these reasons were pretextual or that the adverse employment action was more likely than not based on discrimination. See St. Mary's Honor Center v. Hicks, 509 U.S. at 515 (a proffered "reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason"). Indeed, as noted, plaintiff conceded in her deposition that she did not detect any discriminatory animus in the words or actions of her supervisors.

Finally, plaintiff vaguely alleges that after she informed defendant in April 2005 of her intent to file a charge of gender discrimination with the EEOC, she was divested of most responsibilities, given menial tasks leaving her without enough responsibility to fill her work week, removed from the management distribution list, not given a bonus, not given a formal job description, was forced to share an office with a subordinate, and was generally "ostracized."[4] In her papers on the instant motion, however, plaintiff effectively narrows her retaliation claim to the first two of these alleged retaliatory actions. Even then, however, she has proved unable to specify with any

---

[4] Plaintiff's State and City retaliation claims are governed by the federal standard. See Schiano v. Quality Payroll Sys., 445 F.3d 597, 609 (2d Cir. 2006).

-12-

particularity what responsibilities were removed and what menial tasks were assigned <u>after</u> she filed her claim. As noted, plaintiff did have certain responsibilities reassigned well before she filed her discrimination complaint, but this could not support a claim of retaliation.

The Court has considered plaintiff's other contentions and finds them to be without merit. Accordingly, Waterfront's motion for summary judgment dismissing all of plaintiff's claims is granted in all respects. The Clerk is directed to close Document No. 7 and to enter judgment.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       March 7, 2007